UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIA DEL PILAR NINO,                          Case No. 16-14407

          Plaintiff,                          Stephen J. Murphy, III
v.                                             United States District Judge

FLAGSTAR BANK, FSB,                            Stephanie Dawkins Davis
                                               United States Magistrate Judge

          Defendant.

_____/

**REPORT AND RECOMMENDATION**
**DEFENDANT'S MOTION TO DISMISS (Dkt. 15)**

## I.    PROCEDURAL HISTORY

On December 19, 2016, plaintiff Maria Del Pilar Nino filed a seven-count

complaint in this Court alleging violations of the Florida Deceptive and Unfair

Trade Practices Act ("FDUTPA"), the Real Estate Settlement Procedures Act

("RESPA"), and the Florida Consumer Collection Practices Act ("FCCPA"), as

well as breach of contract, breach of covenant of good faith and fair dealing, fraud,

and negligence.  (Dkt. 1).  Defendant Flagstar Bank, FSB ("defendant" or

"Flagstar") filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on

February 3, 2017.  (Dkt. 11).  Plaintiff filed an amended complaint on February 24,

2017 eliminating the FCCPA claim.  (Dkt. 12).  Plaintiff also filed a response to

the motion to dismiss.  (Dkt. 13).  On March 7, 2017, District Judge Stephen J.

Murphy, III referred the motion to the undersigned for a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Dkt. 14).  Defendant filed

a motion to dismiss plaintiff's amended complaint on March 10, 2017.  (Dkt. 15).

On March 13, 2017, Judge Murphy referred defendant's motion to dismiss

plaintiff's amended complaint to the undersigned (Dkt. 16), plaintiff responded

(Dkt. 19), and defendant filed a reply brief (Dkt. 23).  On June 8, 2017, the parties

submitted a joint statement of resolved and unresolved issues.  (Dkt. 24).  Plaintiff

agreed to dismiss her negligence claim in Count VI. (Dkt. 24).  The Court held a

hearing on the motion on September 7, 2017.  For the reasons that follow, the

undersigned recommends that defendant's motion be **GRANTED**.

## II.   FACTUAL BACKGROUND

In September 2006, plaintiff obtained a mortgage on her property in Miami,

Florida.  (Dkt. 12, Amended Comp. at ¶ 5).  Defendant became the holder of

plaintiff's mortgage on March 19, 2010.  (*Id.*).  On March 24, 2010, defendant

initiated foreclosure proceedings in Florida circuit court.  (*Id.* at ¶ 9).  Sometime

before defendant made filings for foreclosure proceedings, plaintiff began working

with defendant's Loss Mitigation Specialist to modify her loan.  (*Id.* at ¶ 6-11).

Plaintiff sent defendant a third request for a loan modification December 21,

2010; defendant approved plaintiff's participation in a trial period plan ("TPP")

under the Home Affordable Modification Program ("HAMP").  (*Id.* at ¶ 15).

Plaintiff received notice of her approval to enter into the TPP on December 7,

2011.  (*Id.* at ¶ 17).  The TPP provided that in order to accept the TPP offer,

plaintiff needed to make the first trial period payment.  Additionally, to qualify for

2

a permanent modification she needed to submit all required documents and make

the following trial period payments in a timely manner:

> 1st payment: $1,342.81 by 01/01/2012
> 2nd payment: $1,342.81 by 02/01/2012
> 3rd payment: $1,342.81 by 03/01/2012

(*Id.* at ¶ 18; Dkt. 15, Ex. G).  Plaintiff claims that she submitted all of the required

documents and made all three payments in a timely manner.  (Dkt. 12, at ¶ 23, 91).

On March 7, 2012, defendant called plaintiff to notify her that she had

successfully completed the trial period and that defendant was working on a loan

modification.  (*Id.* at ¶ 24).  However, on March 10, 2012, plaintiff received a letter

from defendant informing her that because of her failure to make timely payments

she was in default on her mortgage, a circumstance resulting in the acceleration of

the mortgage to the entire amount.  (*Id.* at ¶ 25).  Between March 2012 and

November 2013, plaintiff made payments to defendant in the amounts specified for

the trial period payments stated above, and defendant accepted those payments.

(*Id.* at ¶ 29).

On December 11, 2013, defendant sent plaintiff a loan modification

agreement for review.  (*Id.* at ¶ 50).  Plaintiff returned the signed loan modification

agreement to defendant on December 20, 2013.  (*Id.* at ¶ 52).  According to

plaintiff, defendant "made it clear that the foreclosure would continue" if she did

not sign and return the loan modification agreement.  (*Id.* at ¶ 51).  However,

despite having returned the signed agreement, defendant published notice of

foreclosure for two weeks, February 26, 2014, and March 6, 2014.  (*Id.* at ¶ 53).

On March 13, 2014, plaintiff was notified that the foreclosure sale was cancelled.

(*Id.* at ¶ 55).

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

To survive a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), a plaintiff

must first comply with Rule 8(a)(2), which requires "'a short and plain statement

of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957).  A plaintiff is also obliged "to provide the grounds

of his entitlement to relief," which "requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of*

*Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007),

quoting, *Twombly,* 550 U.S. at 555 (citations and internal quotation marks

omitted).  And, while a complaint need not contain "detailed" factual allegations,

its "[f]actual allegations must be enough to raise a right to relief above the

speculative level on the assumption that all the allegations in the complaint are

true."  *Id.,* quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks

omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523,

527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

In deciding whether dismissal is appropriate, "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Thus, it is permissible to consider, in the context of a motion to dismiss, documents such as those relating to the mortgage transaction, assignment, and foreclosure because they are referenced in plaintiffs' complaint and are central to their claims. *Allen v. International Truck & Engine Corp.*, 2010 WL 749655, *2 (S.D. Ohio 2010); *see also Havenick v. Network Exp., Inc.*, 981 F.Supp. 480 (E.D. Mich. 1997) ("[T]he Court may properly consider, for the purposes of a Motion under Fed. R. Civ. P. 12(b)(6), the entirety of documents which Plaintiffs rely upon and quote in their Complaint without transforming the Motion into one for Summary Judgment."); *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (when "a document is referred to in the complaint and is central to the plaintiff's claim ... the defendant may submit an authentic copy to the court to be considered on a motion to dismiss.").

B.  Count I–Florida Deceptive and Unfair Trade Practices Act
("FDUTPA")

In Count I, plaintiff alleges violation of the Florida Deceptive and Unfair

Trade Practices Act (alternately "FDUTPA" or "the Act") for defendant's handling

of her loan modification.  For the reasons stated below, plaintiff's claim should be

dismissed because the FDUTPA does not apply to Flagstar Bank.

The FDUTPA prohibits "unfair methods of competition, unconscionable acts

or practices, and unfair or deceptive acts or practices in the conduct of any trade or

commerce."  Fla. Stat. Ann. § 501.204 (2017).  To prevail on a claim under the

FDUTPA, a plaintiff must plead facts that show that the defendant committed a

deceptive act or engaged in an unfair practice.  *Hill Dermaceuticals, Inc. v.

Anthem, Inc.*, 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017) (citation omitted).

However, the plain language of the Act exempts from its application:

> (4) Any person or activity regulated under the laws administered by: .
> . . (b) banks, credit unions, and savings and loan associations
> regulated by the Office of Financial Regulation of the Financial
> Services Commission; (c) banks, credit unions, and savings and loan
> associations regulated by federal agencies.  Fla. Stat. Ann. §
> 501.212(4)(b) and (c).

The central question for the parties is whether the above language exempts Flagstar

Bank, FSB, from operation of the FDUTPA.

To prevail with a claim under the FDUTPA, a plaintiff must plead facts that

show the defendant committed a deceptive act or engaged in an unfair practice.

*Hill Dermaceuticals, Inc.*, 228 F. Supp. At 1302 (citation omitted).  "A deceptive act is one which 'is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'"  *Id.* (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)).  "[A]n unfair practice is one which causes substantial injury to a consumer which the consumer could not have reasonably avoided and which is not outweighed by countervailing benefits to the consumer or to competition."  *Id.* (citing *Porsche Cars N. Am., Inc., v. Diamond*, 140 So.3d 1090, 1096 (Fla. Dist. Ct. App. 2014), review denied, 157 So.3d 1042 (Fla. 2014)).

Plaintiff argues that she has stated a cause of action under FDUTPA that it would be premature for the court to decide whether the statute applies to Flagstar. Here, it is undisputed that Flagstar Bank, FSB, is a federally regulated bank. Indeed, plaintiff admits as much in her complaint.  (Dkt. 12, Amended Comp. at ¶ 2).  However, according to plaintiff, Flagstar was acting as a loan servicer rather than a bank, and because of this fact the bank is subject to the FDUTPA.[1] Defendant, on the other hand, argues that banks like Flagstar are expressly

---

[1] Notably, plaintiff does not expressly argue that loan servicing is an activity that is not subject to federal banking regulations.  Nor does plaintiff cite any authority squarely addressing the issue. However, plaintiff relies on case law which concludes that the determination of whether a bank acts as a loan servicer or a national bank may impact the applicability of the FDUTPA exemption provisions.  *See e.g., Diaz v.  U.S. Bank, N.A.*, 2014 WL 4639431, at *5 (S.D. Fla., Sept. 16, 2014).

exempted from the Act.[2]  *See* Fla. Stat. § 501.212(4)(c); *Wilson v. Everbank, N.A.,*

77 F. Supp. 3d 1202, 1221 (S.D. Fla. 2015) (Recognizing that "[b]y its express

terms" the FDUPTA does not apply to banks regulated by federal agencies.);

*Bankers Trust Co., v. Basciano,* 960 So.2d 773, 778-779 (Fla. Dist. Ct. App. 2007)

("[Plaintiff]'s FDUTPA claim must fail as well.  FDUTPA does not apply to banks

and savings and loan associations regulated by the federal government.").

Defendant posits that since Flagstar is a federal savings bank, it is therefore exempt

from the statute.

In addition to the *Wilson* and *Bascicano* rulings cited above, a host of courts

have relied upon the relatively straightforward language of the statute and its

apparent exempting effect on federally regulated banks in dismissing such claims

against banks.  *See Nardolill v. Bank of America Corp.*, 2013 WL 12154541, at *3

(S.D. Fla.  Dec. 6, 2013) (ruling that Bank of New York Mellon, a federally

regulated bank, was not subject to FDUTPA despite the claim against it arising

from its actions as a trustee).  Indeed, the majority of cases deciding the issue

support defendant's position  that the FDUTPA does not apply to federally

regulated banks; and courts have ruled where a plaintiff has only sued a federally

---

[2] Defendant also raised the argument for the first time in its reply brief and supplemental authority that FDUTPA requires that plaintiff allege a deceptive or unfair practice in the course of trade or commerce and that loan servicing activities are generally not considered "trade or commerce."  Plaintiff responded that arguments raised for the first time in a reply brief should not be relied upon by the Court.  The Court need not consider the "trade or commerce" argument as it finds the fact that defendant is a federally regulated bank to be sufficient reason to dismiss the FDUTPA claim.

regulated bank, as opposed to any bank subsidiaries which may not be regulated by a federal or state agency, it is exempt.  *See* Fla. Stat. Ann. § 501.212(4)(c); *see also Office of Attorney Gen. Dept. of Legal Affairs v. Commerce Commercial Leasing, LLC,* 946 So. 2d 1253, 1257-1258 (Fla. Dist. Ct. App. 2007) ( "[T]he logic appears obvious: if a state or federal agency already regulates banks, there is no need for the Act to interfere." ); *Grave v. Wells Fargo Bank, N.A.*, 2014 WL 11776961, at *3 (S.D. Fla. July 11, 2014) (FDUTPA does not apply to banks and loan associations regulated by federal agencies); *Caban v. J.P. Morgan Chase & Co.*, 606 F. Supp. 2d 1361, 1371 (S.D. Fla. 2009) (noting that FDUTPA "does not apply to federally regulated banks such as Chase"); *Basciano*, 960 So.2d at 778 ("FDUTPA does not apply to banks and savings and loan associations regulated by the state or federal government.").

Defendant's point is well-taken.  In *George v. Wells Fargo Bank, N.A.*, 2014 WL 61487, at *5 (S.D. Fla. Jan. 8, 2014), a case factually similar to the instant case, the Florida district court held that defendant Wells Fargo Bank, N.A., was not subject to the FDUTPA because it is a federally regulated bank even though the claim against it dealt with a trial period plan and permanent loan modification.  *Id.* The court pointed out that defendant's name included "N.A.," which stands for "National Bank," defeating any claim that the defendant was subject to the FDUTPA.  *Id.*  Here, plaintiff has named Flagstar Bank, FSB, as defendant.  Like Wells Fargo Bank, Flagstar is a federally regulated bank.  FSB stands for "federal

savings bank," similar to Wells Fargo's "N.A."  And importantly, plaintiff admits in her amended complaint that defendant is a federal savings bank.  (Dkt. 12, Pg. ID 257, ¶ 2).

The undersigned acknowledges that federal courts in Florida have split on "whether being regulated by a federal agency is sufficient in and of itself to be exempt under Fla. Stat. § 501.212(4)(c) or if, in addition to being federally regulated, the activity at issue must be subject to the federal regulatory authority." *Regions Bank v. Legal Outsource PA*, 2015 WL 7777516, at *5 (M.D. Fla. Dec. 3, 2015).  Notably however, the court in *Regions Bank*, after examining rulings on both sides of the issue, determined that the majority rule in Florida is that it is sufficient that the bank itself is federally regulated, and there is no need to examine whether the activity is federally regulated.  *Id.*

Plaintiff nevertheless insists that the applicability of FDUTPA depends not only on whether the bank is federally regulated, but also on whether the activity in which the bank is engaged is federally regulated.  Plaintiff relies on *Larach v. Standard Chartered Bank Intn'l (Americas) Ltd.*, 724 F. Supp. 2d 1228 (S.D. Fla. 2010) and its progeny of unpublished decisions which have followed, for the proposition that when a bank operates in a non-banking capacity, it is not entitled to the statutory exemption.  *See Diaz v. U.S. Bank, N.A.*, 2014 WL 4639431, at *5 (S.D. Fla. Sept. 16, 2014); *Christie v. Bank of Am., N.A.*, 2014 WL 5285987, at *4 (M.D. Fla. Oct. 15, 2014); *Renfrow v. First Mtg. Am., Inc.*, 2011 WL 2416247, at

*3 (S.D. Fla. June 13, 2011); and *U.S. Bank, N.A. v. Capparelli*, 2014 WL 2807648 (S.D. Fla. June 20, 2014). *Larach* itself involved an assertion that the defendant was acting as a securities broker rather than as a bank. Whether the bank was acting as a securities broker required factual development. Therefore, the court concluded that it would be premature to dismiss the action prior to developing the record to classify the bank's activities. 724 F. Supp. 2d at 1238.

Of the cases cited by plaintiff, only two related to loan servicing. In support, Plaintiff cites *U.S. Bank Nat. Ass'n v. Capparelli*, 2014 WL 2807648, at *4 (S.D. Fla. June 20, 2014). In *Capparelli*, the plaintiff made claims similar to Ms. Nino's against the bank handling the plaintiff's permanent loan modification request. The *Capparelli* court undertook to ascertain whether the bank's loan modification activity itself was federally regulated. *Id.* at *5. The court engaged in a bifurcated inquiry, first determining whether the defendant institution was federally regulated, then answering the question of whether the activity was subject to federal regulation, and thus exempt from FDUTPA. The court concluded that the second part of the inquiry is a question of fact to be determined after the motion to dismiss stage. *Id*

*Caparelli* relied on an earlier state court case, *W.S. Badcock Corp. v. Myers*, 696 So.2d 776, 782 (Fla. Dist. Ct. App. 1996), in which the court was required to inquire into the activities of the defendant in order to determine whether the FDUTPA applied. However, the reason the question was relevant in *Badcock* was

11

because the defendant was not claiming exemption as a federally regulated bank. Indeed, the defendant was not a bank, but a company which claimed to be exempt from the Act under § 501.212(4)(d) based on its claim that the activity in which it was engaged was regulated by the Department of Insurance of Florida.[3]  Thus, though the introductory clause, i.e. § 501.212(4), is the same for both subparts (c) and (d), the *Badcock* case turned upon subpart d's express language exempting "persons and activities regulated under the laws administered by the former Department of Insurance of Florida."  *Id.*  By contrast, § 501.212 (4)(c) expressly exempts "[b]anks, credit unions, and savings and loan associations regulated by federal agencies."  The *Caperelli* court does not seem to make a distinction between the provisions exempting <u>activities</u> regulated by enumerated governmental departments and those exempting specified entities regulated by the listed governmental authorities.   *Caparelli's* implicit suggestion that the introductory clause states a "both and" requirement rather than an "either or" is out of step with the majority of cases in which the status of  an institution as a federally regulated bank is the asserted defense to application of the statute -  making plaintiff's reliance on it here unpersuasive.    Indeed, since the introductory clause of § 501.212 (4) is stated in the disjunctive rather than the conjunctive, ordinary

---

[3] Fla. Stat. Ann. §501.212(4)(d) provides that the following are exempt from the statute:  "Any person or activity regulated under the laws administered by the former Department of Insurance which are now administered by the Department of Financial Services."

construction of the statute would suggest that to qualify for the exemption a party

may be either a person subject to regulation by the listed authorities contained in

the subparts or one engaged in activity subject to regulation by authorities listed in

the subparts.

Plaintiff also cites *Diaz v. U.S. Bank, N.A.*, for the proposition that it is

premature to decide whether Defendant was acting in its capacity as a bank (and

therefore exempt from application of the FDUTPA) or in some other capacity that

would subject Defendant to the FDUTPA.  2014 WL 4639431, at *5 (S.D.  Fla.

Sept. 16, 2014).  *Diaz* involved an allegation that a bank was acting, "through an

agent engaged in a loan servicing" rather than national banking.  *Id.*  More

specifically, the plaintiff had alleged that the bank was working through a non-

bank subsidiary that would not have been eligible for the exemption.  Thus, a

central question in *Diaz* was whether the defendant could be held vicariously liable

for its subsidiary's actions under FDUTPA.  *Id.*  No such circumstance exists here.

Relying on *Larach*, the court ruled that "a factual determination of the capacity in

which BANA (Bank of America N.A.) was acting would be hasty at this juncture."

*Id.*   In the instant case, there is no allegation that Defendant acted through a non-

exempt subsidiary, and there is no confusion as to who was handling the loan

modification.  Thus, *Diaz* is of limited persuasive value here.

All in all, the *Larach* line of cases simply cannot be squared with the Florida

appellate court's decision in *Basciano*, 960 So.2d at 778, and the cases which have

relied upon it.   The undersigned finds the latter line of cases more persuasive than the former in that:  (1) the plain language of the statute rather unambiguously exempts federally regulated banks from its operation; (2) *Basciano* sets forth the ruling of the highest state court that has ruled on this state statute; and (3) the majority of cases interpreting the statute have followed its ruling.  Therefore, the Court concludes that Flagstar, FSB is exempt from the FDUTPA, and plaintiff's claim should be dismissed.

The undersigned acknowledges plaintiff's attached consent order from the Consumer Finance Protection Bureau ("CFPB") in which the CFPB declares that defendant engaged in unfair practices between 2011-2013 in regard to loan modification requests.  (Dkt. 12, Ex. A).   Relevant to Count I, the CFPB declares defendant's practice of delaying permanent loan modification approvals an unfair practice.  (*Id.*).   However, in light of the foregoing analysis, the consent order does not assist the undersigned here.  Flagstar Bank is not subject to the FDUTPA, and thus Count I fails.

C.   Count II–Real Estate Settlement Practices Act ("RESPA")

In Count II, plaintiff alleges that defendant violated the Real Estate Settlement Practices Act because it did not sufficiently respond to her purported qualified written requests for information.  Defendant argues that plaintiff's RESPA claim is barred by the statute of limitations, and if the claim is not barred, it nevertheless fails to state a claim under RESPA because plaintiff did not allege

that the request was sent to defendant's designated address for such requests and the request was not a qualified written request.  (Dkt. 15, Pg. ID 349-50).

Plaintiff's RESPA claim relies on the dates and content of a series of emails between June and August 2013.  On June 13, 2013, plaintiff's attorney, Mr. Fisher, emailed defendant's attorney requesting a status update on plaintiff's loan modification.  (Dkt. 12, Amended Comp. at ¶ 36).  On June 14, 2014, defendant's attorney responded that defendant was working on the loan modification.  (*Id.* at ¶ 37).  On July 1, 2013, Mr. Fisher emailed defendant's attorney requesting another update.  (*Id.* at ¶ 38).  Defendant's attorney replied that she was waiting to hear from defendant on the loan modification.  (*Id.* at ¶ 39).  On August 13, 2013, Mr. Fisher emailed defendant's attorney requesting another update.  (*Id.* at ¶ 40).  Defendant's attorney replied that she was waiting to hear from loss mitigation on the status.  (*Id.* at ¶ 41).   Plaintiff claims that the responses from defendant's attorney did not provide plaintiff with a written response to the information she requested, and as such, plaintiff did not receive a response within the 60-day time period required by RESPA.

The Real Estate Settlement Practices Act, 12 U.S.C. § 2605(e)(1) & (2), provides a servicer of federally related mortgage loans guidelines in responding to a qualified written request from a borrower.  A qualified written request ("QWR") is a "written correspondence" that "includes, or otherwise enables the servicer to identify, the name and account of the borrower and [ ] includes a statement of the

reasons for the belief of the borrower . . . that the account is in error or provides

sufficient detail to the servicer regarding other information sought by the

borrower." § 2605(e)(1)(B) (2013).  Section 2605 imposes duties to respond to a

QWR from a borrower.  § 2605(e)(1)(A).  Specifically, the statute provides that

"[n]o later than 60 days . . . after the receipt from any borrower of any [QWR]"

and "after conducting an investigation," the servicer must "provide the borrower

with a written explanation or clarification that includes . . . information requested

by the borrower or an explanation of why the information requested is unavailable

or cannot be obtained by the servicer," and "the name and telephone number of an

individual employed by . . . the servicer who can provide assistance to the

borrower." § 2605(e)(2) (this statute was amended in 2014 to reduce the time to

reply to 30 days).

The statute of limitations has run on plaintiff's RESPA claim.  Plaintiff does

not include in her complaint a statement regarding the statute of limitations,

however plaintiff concedes that the statute of limitations is three years.  (Dkt. 24,

Pg. 2).  RESPA provides that the three-year limit is "from the date of the

occurrence of the violation."  12 U.S.C. § 2614; *see also Golliday v. First Direct

Mortg. Co.*, 2009 WL 5216141, at *6 (W.D. Mich. Dec. 29 2009).  The alleged

violation of RESPA—failing to properly respond to plaintiff's QWR—would have

occurred once the 60-day period elapsed after plaintiff's last request for

information from defendant on August 13, 2013, that is in November 2013.

Plaintiff filed her complaint December 19, 2016, more than three years after the violation would have occurred, and is thus barred by the statute of limitations.

Plaintiff argues that the statute of limitations begins when the claimant has actual damages to state a claim. (Dkt. 19, Pg ID 531). Plaintiff claims that her damages were not realized until her loan modification was executed in January 2014. (*Id.* at Pg ID 532). Plaintiff's Complaint was filed within three years of realizing damages. Plaintiff cites *Muhammad v. Wells Fargo Bank*, *N.A.*, 2016 WL 5369622, at *3 (E.D. Mich. Sept. 26, 2016), for the proposition that the statute of limitations begins to run when the claimant is damaged by the purported failure to respond to a qualified written request. (Dkt. 19, Pg ID 532). In *Muhammad*, the court did not address the statute of limitations in dismissing the RESPA claim. Rather, the court dismissed the RESPA claim because the plaintiff did not identify how the notice from the loan servicer was insufficient and because the plaintiff did not allege or seek damages. *Id.*

The plain language of the statute makes it clear that the statute of limitations begins on the date of the violation. Because the plaintiff's complaint was filed more than three years after the date the alleged violation occurred the statute of limitations expired on the RESPA claim, and Count II should be dismissed from the complaint.

D.   <u>Count III–Breach of Contract</u>

Count III centers on the trial period plan ("TPP") to which plaintiff and defendant agreed.  There is no dispute that the TPP was an offer and that plaintiff accepted the offer.  However, because there was no consideration for the TPP, the breach of contract claim should be dismissed.

The terms of the TPP were clear.  To accept the TPP offer, plaintiff had to make the first monthly payment of $1,342.81 by January 1, 2012.  (Dkt. 12, Amended Comp. at ¶ 18).  The agreement further stated that plaintiff would qualify for a permanent loan modification after all payments were made (three payments were listed) and all required documents were submitted.  (*Id.* at ¶ 20).  Plaintiff claims that the TPP was a contract and defendant breached it in a number of ways.  First, the TPP provided that once all trial period payments were made on time, defendant would send a "modification agreement detailing the terms of the modified loan."  (*Id.* at ¶ 88).  Plaintiff asserts that though she made all required payments timely and sent the required documents, defendant failed to send an agreement with the terms of the modified loan, thereby resulting in a breach of contract.  (*Id.* at ¶ 92).  Second, plaintiff avers that defendant improperly extended the trial period from the three months listed on the TPP to twenty-three months when she was finally approved for a permanent loan modification.  (*Id.* at ¶ 94).  According to plaintiff, this extension caused an increase in her loan amount by about $100,000 and caused continued delinquency reporting to credit reporting

18

agencies.  (*Id.* at ¶¶ 95-6).  Third, plaintiff argues that defendant breached the contract by continuing to press foreclosure action and sale and charging attorney fees in the loan modification when the TPP itself said fees incurred during the trial period would not be assessed.  (*Id.* at ¶¶ 97-98; Dkt. 15, Ex. G).

   According to defendant, the TPP is not a contract because it lacked consideration and did not provide a definite statement of the terms of contract. (Dkt. 15, Pg. ID 350-51).  Alternatively, according to defendant, if the TPP is an enforceable contract, plaintiff failed to allege breach of the TPP because plaintiff's claims are contradicted by plaintiff's allegations and the TPP itself.  (*Id.* at Pg. ID 352).

   Under Florida law, to succeed on a breach of contract claim, "a plaintiff must prove the existence of a valid contract, a breach of such contract, and damages resulting from such breach."  *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1345 (S.D.  Fla. 2011) (citing *Knowles v. C.I.T. Corp.*, 346 So.2d 1042, 1043 (Fla. Dist. Ct. App. 1977).  A valid contract exists if the following are present: offer, acceptance, consideration, and the essential terms of the contract.  *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004).

   The specific question of whether a TPP is an enforceable contract has not been settled.  However, most Florida authority favors dismissing a breach of contract claim on a TPP for lack of consideration.  See *Sutcliffe v. Wells Fargo*

*Bank, N.A.*, 283 F.R.D. 533, 552 (N.D. Cal. 2012), for a brief discussion of the split of authority.

Plaintiff argues that the elements of a contract are present: plaintiff accepted defendant's offer to enter into the TPP, made the required payments and sent the required documents to qualify for a permanent loan modification.  (Dkt. 19, Pg ID 534).  According to plaintiff, in return for defendant's promise of a permanent modified loan, plaintiff gave consideration by filing for chapter 13 bankruptcy. (*Id.* at Pg ID 535).  However, in the amended complaint, plaintiff does not state that she filed for bankruptcy as consideration for the TPP/permanent modification. In fact, plaintiff makes no allegation at all regarding consideration.  Rather, plaintiff simply alleges that she "was forced" to declare bankruptcy without connecting her act of declaring bankruptcy to obtaining the TPP and permanent loan modification.  (Dkt. 12, Amended Comp. at ¶ 32).  She also does not allege that defendant requested or otherwise required her file for bankruptcy in order for defendant to grant a permanent loan modification.

Defendant argues further that the reduced monthly payments plaintiff paid under the TPP also do not qualify as consideration for a loan modification because plaintiff had a preexisting duty to pay on the loan.  (Dkt. 15, Pg ID 350-51). Plaintiff acknowledges in her brief that such a preexisting duty does not qualify as consideration.  (Dkt. 19, Pg ID 535).  *See Senter*, 810 F. Supp. 2d at 1346 (The court pointed out that under Florida law, "performance of a preexisting duty does

not constitute the consideration necessary to support a valid contract.") (citing

*Brinson v. Herlong*, 164 So. 137 (Fla. 1935)).   Because paying reduced monthly

payments on the mortgage does not change plaintiff's preexisting duty to make

monthly mortgage payments and filing her for bankruptcy was not undertaken as

consideration for the TPP, there was no consideration for the TPP.

Therefore, because consideration is lacking, the TPP is not enforceable as a

contract, and Count III should be dismissed.

E.      <u>Count IV–Breach of Covenant of Good Faith and Fair Dealing</u>

Because the TPP fails as an enforceable contract for lack of consideration,

Count IV should also be dismissed.  "Florida contract law recognizes the implied

covenant of good faith and fair dealing in every contract."  *Ins. Concepts &*

*Design, Inc. v. Healthplan Servs*., Inc., 785 So.2d 1232, 1234 (Fla. Dist. Ct. App.

2001) (citations omitted).  Florida law applies two limits to the application of the

implied covenant.  First, the covenant cannot be used to override express terms of

the agreement.  *Id*.  Second, the claim of breach of covenant must be accompanied

by a claim of breach of contract.  *Id.*  The requirement of good faith and fair

dealing "attaches only to the performance of a specific contractual obligation."

*Johnson Enterprises of Jacksonville, Inc., v. FPL Grp., Inc.*, 162 F.3d 1290, 1314

(11th Cir. 1998).  The implied covenant is meant to protect the "reasonable

expectations of the contracting parties in light of their express agreement," *Barnes*

*v. Burger King Corp*., 932 F. Supp. 1420, 1438 (S.D. Fla. 1996) (citations

omitted), by imposing a duty "to act in a commercially reasonable manner." *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1226 (S.D. Fla. 2013) (citation omitted).

Because the TPP is not an enforceable contract, there cannot be a claim for breach of good faith and fair dealing since Florida law requires such a claim be attached to "the performance of a specific contractual obligation." *Johnson Enterprises*, 162 F.3d at 1314. If there is no contract, there are no contractual obligations. Therefore, Count IV is subject to dismissal.

F.    Count V–Fraud

In Count V, plaintiff alleges that defendant acted fraudulently when it requested that plaintiff purchase flood insurance on her property when plaintiff had already informed defendant that she had flood insurance. This representation, according to plaintiff, resulted in a delay of her loan modification and, in the aggregate, caused an increase in her principal amount due by almost $100,000. However, plaintiff has failed to properly plead her fraud claim. Thus, the claim must fail.

Under Florida law, the elements of a fraud claim are: "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation." *Lopez-Infante v. Union Cent. Life Ins. Co.*, 809 So. 2d 13, 15 (Fla.

Dist. Ct. App. 2002).  Additionally, Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." "Although the application of Rule 9(b) does not require formulaic compliance, we have made clear that in order to plead fraud with particularity, a plaintiff must allege . . . 'the time, place, and content of the alleged misrepresentation,'" *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 587 (6th Cir. 2016) (citation omitted), the precise statements, documents, or misrepresentations made, and what the defendant gains by the alleged fraud.  *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. Appx. 81, 86 (11th Cir. 2008).  "[A]n essential allegation and circumstance of fraudulent conduct cannot be alleged in [ ] [a] conclusory fashion. . . .  [A] plaintiff is not expected to actually *prove* his allegations, but it must offer more than 'mere conjecture.'" *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002) (emphasis in original) (internal quotations omitted).

Plaintiff's allegations on flood insurance transactions and correspondence are not entirely clear.  According to plaintiff, in or around September 2013, plaintiff received a letter from defendant informing her that defendant had purchased an additional flood insurance policy for the property in October 2012. (Dkt. 12, Comp. at ¶ 42).  Plaintiff called defendant and cancelled the policy because she already had flood insurance for the property in both 2012 and 2013. (*Id.* at ¶ 44).  Plaintiff sent defendant a copy of her flood insurance policy.  (*Id.* at ¶

45).  She next alleges that defendant informed her she needed to purchase an additional flood insurance policy to proceed with the loan modification.  (*Id.* at ¶ 47).  On October 10, 2013, defendant informed plaintiff that she would need to cancel the additional insurance plan she bought at defendant's request.  (*Id.* at ¶ 48).  In this October 10 letter, defendant stated that the National Flood Insurance Program only recognizes the oldest policy on the property, and therefore she needed to cancel the second policy but increase the amount of the first policy to "minimum the mortgage balance."  (Dkt. 15, Ex. M).  She removed the second policy so her loan modification could proceed.  (Dkt. 12, Amended Comp. at ¶ 49).  On December 11, 2013, Flagstar approved plaintiff for a loan modification.  (*Id.* at ¶ 50).

Plaintiff claims that defendant's statement that she needed to purchase additional flood insurance was a fraudulently false representation of fact because plaintiff already had flood insurance, which defendant already knew.  However, plaintiff has not pled facts sufficient to satisfy the elements of a fraud claim. The first element of fraud requires a false statement of material fact.  "A fact is material if, but for the alleged nondisclosure or misrepresentation, the complaining party would not have entered into the transaction."  *Atl. Nat. Bank of Florida v. Vest*, 480 So. 2d 1328, 1332 (Fla. Dist. Ct. App. 1985) (citation omitted).  The question of materiality is normally a question of fact unless the facts are undisputed.  *Id.*  Plaintiff does not allege that she would not have purchased

additional flood insurance if defendant had not requested it of her.  She merely states that defendant told her she needed to purchase flood insurance when defendant already knew she had flood insurance, and that she did in fact purchase additional flood insurance.  (Dkt. 12, Amended Comp. at ¶ 113-4).  Nevertheless, it may reasonably be inferred from the allegations of the complaint that plaintiff would not have purchased the additional policy if defendant's representative had not told her it was necessary to complete the modification.  However, even if the representation that plaintiff needed to purchase flood insurance is deemed material, plaintiff fails on other elements.

The second element requires that the defendant knew the representation was false when the representation was made.  Ms. Nino fails to allege any facts showing that defendant knew, at the time it requested the additional flood insurance, that she did not need the additional policy.  Rather, she claims defendant knew the representation was false because it knew she already had a flood insurance policy.  (*Id.* at ¶ 114).  She does not make a connection between defendant's knowledge of her first flood insurance policy with knowledge that she did not need an additional flood insurance policy.  The contents of the October 10, 2013 letter illuminate this issue.  In the letter, defendant states that plaintiff needed to cancel the second policy but *increase the first policy*.  This letter shows that defendant knew plaintiff needed additional flood insurance, not that plaintiff did *not* need additional flood insurance.  Plaintiff has thus not satisfied element two.

25

Plaintiff has sufficiently demonstrated that defendant intended plaintiff to rely on the representation that she needed additional flood insurance, satisfying the third element.  Plaintiff's allegation that the representative stated that the insurance was required to complete the modification demonstrates an intention for plaintiff to act on the representation in order to achieve the desired result.

Plaintiff has not, however, pled sufficient facts to show that defendant's allegedly false representation, and her reliance thereon, caused the injury complained of.  In her complaint she claims that defendant's representation caused further delay of her permanent loan modification and prolonged her trial period, which, in the aggregate, caused an increase in her principal loan balance by almost $100,000.  (*Id.* at ¶ 118).  This conclusory statement does not establish a direct link between defendant's representation that she needed an additional policy, defendant informing her she needed to cancel the additional policy but increase the amount of the first policy, and further causing a delay in getting her permanent loan modification, thereby increasing the loan amount by almost $100,000.  Furthermore, she alleges in ¶ 14 of the complaint, without reference to the flood insurance requirement, that at some unspecified time during the modification process, she was asked "to sign a document that changed the terms of her loan to include taxes and insurance, which resulted in her mortgage payment doubling." (Dkt. 12).    Furthermore, the alleged fraud occurred sometime between September 2013 and December 2013 (plaintiff does not specifically state the date).  She

26

received her loan modification in December 2013. She does not allege that her loan modification would have been approved in or around September 2013 but for the false representation nor does she allege specifically that the delay in getting the proper flood insurance is what added to the delay in receiving her loan modification.

Moreover, plaintiff failed to plead her claim in accordance with Rule 9(b). Plaintiff has not alleged with specificity when the misrepresentation was made. She alleges that in or around September 2013 defendant informed her that it had purchased another policy for her (the first policy she canceled), but does not allege when defendant told plaintiff to purchase another policy. Further, she does not allege the precise statements or documents involved, nor has she alleged what the defendant gained by the alleged fraud. Plaintiff's claim that $100,000 was added to the principal and interest of her mortgage is not readily or plausibly traceable from the factual allegations set forth in the complaint to the request that she obtain additional flood insurance. She has thus failed to plead her claim with particularity as required by Rule 9(b).

Therefore, plaintiff's fraud claim in Count V should also be dismissed.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's Motion to Dismiss be **GRANTED** in its entirety.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 31, 2017             s/Stephanie Dawkins Davis
                                    Stephanie Dawkins Davis
                                    United States Magistrate Judge

28

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>December 31, 2017</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov